**UNITED STATES of America**

v.

**Andre DEMER, Defendant.**

**Nos. 1:CR–90–0290, 3:CV–92–358.**

United States District Court,
M.D. Pennsylvania.

July 14, 1992.

Martin C. Carlson, Asst. U.S. Atty., Harrisburg, Pa., for U.S.

Spero T. Lappas, Harrisburg, Pa., for defendant.

## MEMORANDUM

McCLURE, District Judge.

*July 14, 1992*

### BACKGROUND

On March 20, 1992, Andre Demer filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. Demer contends that his concurrent sentences of thirty months each, handed down by this court on February 8, 1991, on convictions for two counts of bank fraud, 18 U.S.C. § 1344, are in excess of the maximum sentence authorized by law. At sentencing, Demer argued that because he intended to pay back the fraudulently obtained loans amounting to $890,000.00, and because the loans were secured to some extent, the only loss for the purpose of calculating his guideline range was the actual loss of $240,000.00 by the victim, Mellon Bank. Based on the prevailing law, the court rejected this argument, and determined that the offense involved an intended loss of $890,000.00. This resulted in an increase of eleven levels in Demer's sentencing guideline offense level.

On December 4, 1991, the Third Circuit held that "fraud 'loss' is, in the first instance, the amount of money the victim has actually lost (estimated at the time of sentencing), not the potential loss as measured at the time of the crime." *United States v. Kopp*, 951 F.2d 521, 536 (3d Cir.1991). Since this court believed the retroactivity of *Kopp* to be less than certain, the United States was directed to file a response to Demer's motion. In accordance with the court's order, on May 12, 1992, the United States filed both a response and memorandum in opposition to Demer's motion. Subsequently, Demer filed a reply brief.

## DISCUSSION

■ In its brief, the United States addresses general issues of the retroactive effect of judicial decisions. However, it fails to address with any specificity the true issue before this court, which concerns the retroactive effect of the *Kopp* decision itself. Since the relevant portion of the *Kopp* decision deals exclusively with the Third Circuit's interpretation of the Sentencing Guidelines, the court must determine the retroactive effect, if any, of judicial guideline interpretations. The logical starting point for this determination is the *Kopp* decision itself.

Following an analysis of the guidelines in effect at the time of sentencing, the Third Circuit stated:

The foregoing leads to the conclusion that the fraud guideline defines "loss" primarily as the amount of money the victim has actually ended up losing at the time of sentencing, not what it could have lost. Under the guideline in effect at sentencing, the "loss" should have been revised upward to the amount of loss that the defendant intended to inflict on the victim, or to the amount of probable loss, if either intended or probable loss was estimatable and higher. Before finally adopting this view, however, we will survey the case law interpreting "loss" calculation under the fraud guideline to see if it affects our tentative conclusion.

*Kopp*, 951 F.2d at 531. After reviewing the case law, the Third Circuit explained that "[a]lthough the courts have split on how to define fraud 'loss,' we find the logic in *Schneider*[1] and *Hughes*[2] compelling, and we believe that the contrary case law relies on a flawed equation of fraud and theft crimes." *Id.* at 535. The Third Circuit also noted that the 1991 amendment to Application Note 7 of U.S.S.G. § 2F1.1 indicated that the Sentencing Commission agreed with its interpretation of loss under the fraud guideline. *Id.* at 534–36.

(b) *Fraudulent Loan Application and Contract Procurement Cases*

In fraudulent loan application cases and contract procurement cases where the defendant's capabilities are fraudulently represented, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered, or can expect to recover, from any assets pledged to secure the loan.

In some cases, the loss determined above may significantly understate or overstate the seriousness of the defendant's conduct. For example, where the defendant substantially understated his debts to obtain a loan, which he nevertheless repaid, the loss determined above (zero loss) will tend not to reflect adequately the risk of loss created by the defendant's conduct. Conversely, a defendant may understate his debts to a limited degree to obtain a loan (*e.g.*, to expand a grain export business), which he genuinely expected to repay and for which he would have qualified at a higher interest rate had he made truthful disclosure, but he is unable to repay the loan because of

---

1. *United States v. Schneider*, 930 F.2d 555 (7th Cir.1991).

2. *United States v. Hughes*, 775 F.Supp. 348 (E.D.Cal.1991).

some unforseen event (*e.g.*, an embargo imposed on grain exports) which would have caused a default in any event. In such a case, the loss determined above may overstate the seriousness of the defendant's conduct.

U.S.S.G. App. C, Amendment 393 at 222–23 (Nov.1991).

The gist of the *Kopp* decision is that under the guidelines, as amended in November 1991, "loss" in a fraud case is defined primarily as the amount of money the victim has actually ended up losing at the time of sentencing, not what it could have lost. Significantly, the Third Circuit specifically stated that the contrary case law was flawed. On February 8, 1991, this court sentenced Andre Demer under the same guidelines and determined the intended loss to be the amount of money the victim could have lost. This determination was based in large part upon the flawed case law cited by the Third Circuit in *Kopp*. In all likelihood, had Demer appealed his sentence, in an opinion substantially similar to the *Kopp* opinion, the Third Circuit would have held that this court erred in concluding that the loss under the fraud guideline, U.S.S.G. § 2F1.1, was the loan amount fraudulently obtained. *Kopp*, 951 F.2d at 536.

While this court believes in some respects that Demer's collateral attack of his sentence should be precluded due to his failure to pursue an appeal, especially since it involves an issue which he vehemently argued at sentencing, we do not believe the ends of justice would be served by such a decision. The persuasive character of the *Kopp* opinion coupled with the confirming nature of the amended Note 7 to U.S.S.G. § 2F1.1, leads to the inevitable conclusion that this court misinterpreted the meaning of "loss" as used in the fraud guideline when sentencing the defendant. Consequently, at the time of Demer's sentencing,

the law regarding the calculation of a "loss" under U.S.S.G. § 2F1.1 was not as this court believed it to be.

■ A court is empowered to modify the sentence of a defendant serving an excessive sentence due to that court's misinterpretation of a sentencing guideline, regardless of the ambiguity of the guideline as it then existed and the number of other courts which committed the same error. Indeed, the guidelines themselves allow for the retroactive application of certain amended guidelines which would reduce the term of imprisonment for defendants who have already been sentenced. See U.S.S.G. § 1B1.10.

Accordingly, this court will modify Andre Demer's sentence to conform with the definition of loss espoused by the Third Circuit in *Kopp* and confirmed by the November 1991 amendment to U.S.S.G. § 2F1.1, commentary (n. 7). See U.S.S.G. App. C, Amendment 393 at 222–23 (Nov.1991).

Based on a total offense level of nineteen and a criminal history category of I, the court originally determined the guideline range to be thirty to thirty-seven months. Demer originally received a sentence of thirty months. The total offense level of nineteen included an increase of eleven levels based on the court's calculation of intended loss as $890,000. This $890,000 represented the amount of money the victim could have lost, not the amount of money the victim actually ended up losing at the time of sentencing, as required by *Kopp*. An informal investigation by the United States Probation Office has since revealed that the amount of money the victim actually lost at the time of sentencing was $255,418.24.[3] A sentence based on a loss calculation of $255,418.24 would have resulted in an increase of eight levels. See U.S.S.G. § 2F1.1(b)(1).[4] This is three levels

---

**3.** A letter dated July 8, 1992 from the attorney for the victim, Mellon Bank, setting forth the amount of the loss, is attached as Appendix 1 to this memorandum.

**4.** The eight level increase applies to a loss that is more than $200,000, but not more than $350,-000. U.S.S.G. § 2F1.1(b)(1)(I). Consequently,

even if either party were to suggest that minor adjustments should be made in determining the precise loss, there is not even a remote likelihood that the figure of $255,418.24 provided to the court would be changed sufficiently to remove the loss from the eight level increase category. Moreover, the court believes there is no basis in this case to find that the actual loss

less than the increase of eleven levels Demer received at sentencing. Therefore, Demer's total offense level will be reduced by three levels to sixteen.

A total offense level of sixteen with a criminal history category of I results in a sentence guideline range of twenty-one to twenty-seven months. Because the court originally sentenced Demer at the lowest level of the guideline range, his modified sentence will also be at the lowest level of the corrected guideline range. Accordingly, this court modifies the term of imprisonment of Andre Demer's sentence to twenty-one months.

## APPENDIX 1

*July 8, 1992*

Mr. Anthony C. Harvilla
U.S. Probation Officer
Room 2000—Penn Place
20 North Pennsylvania Avenue
Wilkes Barre, PA 18701

RE: U.S. v. Andre Demer, 1:CR–90–00290

Dear Mr. Harvilla:

Edwin Darrah of Mellon Bank has asked me to respond to your letter of July 2, 1992, requesting specific information on the loss that Mellon suffered as a result of Mr. Demer's fraud as of February 8, 1991. The total loss for principal and interest as of February 8, 1991, was $255,418.24. This was computed as follows.

On December 29, 1989, Mellon Bank loaned $245,000 to Allegheny Office Property Limited Partnership. The only payment of principal was the result of the bank taking as a setoff the proceeds in an account created to pay interest on the loan which totaled $5,542.08. This left a principal amount of $239,457.92 unpaid. This setoff took place on July 2, 1990. Interest accrued on the loan from June 30, 1990, through February 8, 1991, in the amount of $15,960.32.

United Federal Savings Bank, the first mortgage holder, took the properties to mortgage foreclosure sale and bought both properties without any competing bids. Therefore, all junior liens, including that of Mellon Bank (Central) N.A., were discharged from the property.

The only potential source of repayment of the loan is represented by promissory notes purportedly signed by limited partners which total $126,000. As previously reported to the U.S. Attorney, the limited partners have refused to pay the amounts due under these notes because of the fraud perpetrated on them by Mr. Demer. Therefore, the bank's only alternative would be to sue under these notes, and the outcome would be unclear at best. Furthermore, the only thing that would be accomplished by suing the limited partners would be to shift the loss from Mellon Bank to them.

If you need anything further regarding this, please let me know.

Sincerely yours,
/s/ Anthony J. Gerace, Jr.
Anthony J. Gerace, Jr.

significantly understates or overstates the seriousness of the defendant's conduct. See U.S.S.G. § 2F1.1, commentary, n. 7(b). Thus,

the court believes no useful purpose would be served by a new sentencing hearing, and the sentence will be modified without a hearing.